UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JOEL BARCELONA,
    Plaintiff,

vs.                                        Case No.:  3:20cv5356/MCR/EMT

H. BURKES, et al.,
    Defendants.
                             /

## **REPORT AND RECOMMENDATION**

Plaintiff Joel Barcelona (Barcelona), an inmate of the Florida Department of Corrections (FDOC) proceeding pro se and in forma pauperis, commenced this action by filing a civil rights complaint pursuant to 42 U.S.C. §1983 (ECF No. 1). Presently before the court is Barcelona's Third Amended Complaint (ECF No. 18).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B)–(C); Fed. R. Civ. P. 72(b).  After careful consideration of the issues presented, it is the opinion of the undersigned that Barcelona's claims should be dismissed for failure to state a claim upon which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b).

I. BACKGROUND

Barcelona sues three Defendants in this case: (1) H. Burkes, a correctional officer at the Northwest Florida Reception Center (NWFRC); (2) W. Schwarz, a major at NWFRC; and (3) A. Keaton, a representative of the Office of the Secretary of the FDOC (ECF No. 18 at 1–2).[1] Barcelona claims Defendants were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment, by destroying his hearing aid during a cell search (Defendant Burkes) and failing to replace the hearing aid (all Defendants) (*id.* at 8–14). As relief, Barcelona seeks monetary damages (*id.* at 12–13).

II. RELEVANT LEGAL STANDARDS

   A. **Statutory Screening Standard**

Because Barcelona is a prisoner proceeding in forma pauperis, the court must dismiss this case if the court determines it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b). The statutory language "tracks the language of Federal Rule of Civil Procedure 12(b)(6)," and thus dismissals for failure to state a claim are governed by the same

---

[1] The court refers to the page numbers automatically assigned by the court's electronic filing system.

standard as Rule 12(b)(6). *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997). The allegations of the complaint are taken as true and construed in the light most favorable to the plaintiff. *See Davis v. Monroe Cnty. Bd. of Educ.*, 120 F.3d 1390, 1393 (11th Cir. 1997).

The court may consider documents attached to a complaint or incorporated into the complaint by reference, as well as matters of which a court may take judicial notice.[2] *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Saunders v. Duke*, 766 F.3d 1262, 1272 (11th Cir. 2014).

---

[2] Federal Rule of Evidence 201 permits a court to "judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). However, "the taking of judicial notice of facts is, as a matter of evidence law, a highly limited process. The reason for this caution is that the taking of judicial notice bypasses the safeguards which are involved with the usual process of proving facts by competent evidence in district court." *Shahar v. Bowers*, 120 F.3d 211, 214 (11th Cir. 1997) (per curiam) (en banc). "In order to fulfill these safeguards, a party is entitled to an opportunity to be heard as to the propriety of taking judicial notice." *Dippin' Dots, Inc. v. Frosty Bites Distrib., LLC*, 369 F.3d 1197, 1205 (11th Cir. 2004) (internal quotation marks omitted and alteration adopted). Rule 201 does not require courts to warn parties before taking judicial notice of some fact; but, upon the party's request, it does require an opportunity to be heard after the court takes notice. Fed. R. Evid. 201(e).

Barcelona is hereby advised that if he disputes the accuracy of the facts taken from the sources identified in this Report and Recommendation, or if he otherwise wishes to be heard on the propriety of the court taking judicial notice of those facts, he must do so in an objection to this Report and Recommendation. *See Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 651–53 (11th Cir. 2020) (district court properly took judicial notice where petitioner had opportunity to object to report and recommendation after magistrate judge took judicial notice of dates from petitioner's state court dockets, but petitioner did not ask to be heard, dispute accuracy of judicially noticed facts, or indicate he lacked the ability to dispute state court dockets).

Case No.: 3:20cv5356/MCR/EMT

To survive dismissal at the screening phase, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). The plausibility standard is met only where the facts alleged enable "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id*. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*. (internal quotation marks and citation omitted).

The determination of whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. at 678 (internal quotation marks and citation omitted). And "bare assertions" that "amount to nothing more than a "formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." *Id*. at 681 (internal quotation marks and citation omitted). Stated succinctly,

> [p]leadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.* at 679.

A complaint also is subject to dismissal "when its allegations, on their face, show that an affirmative defense bars recovery on the claim." *Douglas v. Yates*, 535 F.3d 1316, 1321 (11th Cir. 2008) (internal quotation marks omitted). Qualified immunity is an affirmative defense. *Kesinger v. Herrington*, 381 F.3d 1243, 1247 (11th Cir. 2004). Qualified immunity shields government officials from civil liability in their individual capacities when the government official acted within the scope of his discretionary authority and the official's conduct did not violate clearly established statutory or constitutional rights. *Id.* at 1247–48. A correctional officer acts within the scope of his discretionary authority when conducting a search of an inmate's cell. *See* Fla. Admin. Code R. 33-602.203(9)(a) ("All cells, lockers, dormitories and other areas of an institution may be searched in a reasonable manner at any time"); *see also, e.g., Moton v. Walker*, 545 F. App'x 856, 859 (11th Cir. 2013) (holding that defendant was acting within his discretionary authority as an FDOC corrections officer when he searched inmate's cell). Once an officer shows

that he acted within the scope of his discretionary authority, the plaintiff must attempt to overcome the qualified immunity defense by showing that: (1) the defendant violated a constitutional right, and (2) violation of the right was clearly established. *Kesinger*, 381 F.3d at 1248.

### B.     Eighth Amendment Standard

The Eighth Amendment prohibits the "inflict[ion]" of "cruel and unusual punishments." U.S. Const. amend VIII. Under this Amendment, "[f]ederal and state governments . . . have a constitutional obligation to provide minimally adequate medical care to those whom they are punishing by incarceration." *Harris v. Thigpen*, 941 F.2d 1495, 1504 (11th Cir. 1991).  As particularly relevant here, the Supreme Court has held that prison officials violate the bar on cruel and unusual punishments when they display "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

A deliberate-indifference claim entails both an objective and a subjective component. *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004).  First, the inmate must establish "an objectively serious medical need"—that is, "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention"— one that, "if left unattended, poses a substantial risk of serious harm." *Id.*  (alteration

adopted) (internal quotation marks omitted).  Second, the inmate must prove that prison officials acted with deliberate indifference.  *Brown*, 387 F.3d at 1351.  "Deliberate indifference" requires two showings: an awareness of facts from which the inference could be drawn that a substantial risk of serious harm exists and drawing of the inference.  *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (internal quotations marks and citations omitted).  Thus, deliberate indifference occurs only when a defendant knows of and disregards an excessive risk to inmate health or safety, is aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and draws that inference.  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  It is not enough that the unjustifiably high risk of harm is so obvious that the defendant **should have known** about it.  Deliberate indifference requires that the defendant **actually knew** of the excessive risk to inmate health or safety.  *Id.* at 836–37 (emphasis added).  An "official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment."  *Id.* at 838.  The Supreme Court has likened the deliberate-indifference standard to "subjective recklessness as used in the criminal law."  *Id.* at 839–40.

III. DISCUSSION

As previously noted, Barcelona claims that Defendants were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment, by destroying his hearing aid during a cell search (Defendant Burkes) and failing to replace it (all Defendants). The facts concerning Barcelona's hearing loss and receipt of a hearing aid are set forth in the Eleventh Circuit's opinion in *Barcelona v. Sec'y, Dep't of Corr.*, 847 F. App'x 689 (11th Cir. Mar. 2, 2021). In that case, Barcelona brought a § 1983 action in the district court for the Southern District of Florida against the FDOC Secretary, warden of South Bay Correctional Facility, and Dr. Raymond Herr, claiming those Defendants were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment, because they refused to provide him with a hearing aid for his right ear.[3] 847 F. App'x at 689–90. The Eleventh Circuit recited the underlying facts as follows:

> Barcelona has been in the custody of the FDOC since March 21, 2005. On June 6, 2014, after he reported that he had experienced hearing loss to prison officials, Barcelona was seen by Dr. Arthur G. Zinaman, an audiologist. Dr. Zinaman found that Barcelona had asymmetrical hearing loss—"a profound hearing loss in the right ear and only mild hearing loss in the left ear."[FN 1] Based on his observations, Dr. Zinaman noted that "Barcelona's left ear would be a candidate for a hearing aid for overall hearing due to the lack of hearing in the right

---

[3] The district court case, *Barcelona v. Sec'y, Dep't of Corr.*, was assigned Case No. 9:15-cv-80102-RLR (S.D. Fla.).

ear." On August 12, 2014, Dr. Zinaman issued a second report noting that "[a] mild gain device for the left ear may be beneficial. . . . Alternatively, a power instrument for the right ear may provide speech and environmental awareness with possible transcranial effect."

> [FN 1: "Profound" hearing loss is the most impaired level; "mild" hearing loss is the least impaired level.]

On August 22, 2014, Dr. Raymond Herr, the Chief Medical Officer for Corrections Healthcare Companies, reviewed Barcelona's request for a hearing aid for his right ear. Dr. Herr denied Barcelona's request, finding that:

> Based on the audiometry results and the adequacy of the hearing levels in Mr. Barcelona's left ear, he did not meet the medical criteria guidelines for bilateral hearing loss under HSB 15.03.27(G)(2)(a)–(b)[FN 2] and therefore Mr. Barcelona was not a candidate for a hearing aid. Additionally, based upon the audiometry results for the right ear, and the profound hearing loss, it was not medically probable that a power instrument device for the right ear could have remedied Mr. Barcelona's conditions.
>
> [FN 2: Health Services Bulletin No. 15.03.27 provided that a hearing aid recipient "must have a bilateral (both ears) hearing loss. A recipient who has a unilateral (one ear) hearing loss is not eligible for services."]

On September 24, 2014, Barcelona filed a formal grievance with prison officials, asserting that the decision not to provide him with a hearing aid was inadequate medical care in violation of the Eighth Amendment and requesting that the prison provide him a hearing aid for his right ear. Dr. Jules Heller, the medical director for the prison, prepared a response, noting that:

> Records indicate you only have hearing loss in your right ear. Per policies and procedures, in order to be eligible for services, the recipient must have a bilateral (both ears)

> hearing loss. A referral was submitted, but denied because you do not meet this criteria based on your evaluation with the audiologist. Based on the above information your grievance is denied.
>
> The Warden signed off on the response and denied Barcelona's grievance. Barcelona submitted an administrative appeal to the Secretary of the Department of Corrections, but the appeal was returned "without action" because it was untimely. On November 16, 2014, Barcelona filed another formal grievance regarding the decision, which was also denied, as was the subsequent appeal.
> . . . .
> The district court granted the defendants' motion for summary judgment. As relevant to this appeal, it found that the defendants were "protected by qualified immunity" in their individual capacities.[FN 5] First, the district court noted that Barcelona did "not dispute that the [d]efendants were acting within their discretionary authority in declining to authorize a hearing aid." Second, the district court determined that "the constitutional question of whether [Barcelona's] asymmetrical hearing loss constituted a serious medical need" was not clearly established in 2014 when Barcelona's hearing aid request was denied.
>
>> [FN 5: The district court also found that the defendants were "absolutely immune from suits for damages" in their official capacities due to state sovereign immunity, but we do not address this issue because Barcelona does not challenge the district court's grant of summary judgment to the defendants on his official capacity claims.]

847 F. App'x at 690–92.

In November 2018, while Barcelona's case was pending in the Southern District, Barcelona was fitted for a hearing aid for his left ear by a licensed hearing aid specialist. *See Barcelona v. Sec'y, Dep't of Corr.*, No. 9:15cv80102-RLR, Order

Granting Defs.' Mot. Summ. J. (S.D. Fla. Sept. 10, 2019) (citations to supporting evidentiary materials omitted). According to the district court's factual findings, although Barcelona's hearing in both ears had remained stable in the intervening years, the Health Services Guidelines changed as of November 1, 2018, so that Barcelona qualified for a left ear hearing aid. *Id.* (citations to supporting evidentiary materials omitted). The licensed hearing aid specialist testified in her deposition that Barcelona's hearing in the left ear improved with the hearing aid. *Id.* (citations to supporting evidentiary materials omitted). However, even with the hearing aid, Barcelona stated that as of August 2019 (five months prior to Defendants' conduct in this case), he could not "hear T.V., loud speaker, mail calls, meal calls, or [if] somebody [was] calling behind [him] where the voice came from."

    Now we come to the facts Barcelona alleges in the instant case. On January 4, 2020, a captain ordered a "shake down" of inmates' cells in dormitory C-2, where Barcelona was housed (ECF No. 7 at 4). During the cell search, Defendant Burkes retrieved Barcelona's property from where it was stored and threw it on the floor, including Barcelona's "hearing aid in a hearing aid case," which caused the hearing aid to break (*see id.* at 5–6, 14–15). Barcelona filed a formal grievance to the warden, requesting that the hearing aid be replaced (ECF No. 18 at 8). Defendant Schwarz denied the grievance, stating that Officer Burkes was interviewed and

denied breaking the hearing aid (*id.*). Barcelona filed an appeal with the Office of the Secretary of the FDOC, again seeking replacement of the hearing aid (*id.*). Defendant Keaton, the Secretary's representative, returned the appeal without action due to a procedural defect (*id.*). Barcelona re-filed the appeal, but Keaton again returned it without action on the same procedural ground (*id.*).

Barcelona contends Officer Burkes throwing the hearing aid on the floor and refusing to replace it, and Major Schwarz and Representative Keaton denying his grievances and refusing to replace the hearing aid, constituted deliberate indifference to his serious medical needs (EF No. 18 at 8–14). As in Barcelona's case in the Southern District, Barcelona relies on *Gilmore v. Hodges*, 738 F.3d 266 (11th Cir. 2013), in support of his contention that his hearing loss constituted a serious medical need (*see* ECF No. 18 at 10). In the Southern District case, however, the Eleventh Circuit rejected Barcelona's argument that *Gilmore* clearly established that *asymmetrical* hearing loss (which is the type with which Barcelona was diagnosed) is a serious medical need, stating as follows:

> Although we held in *Gilmore* that "significant and substantial hearing loss that can be remedied by a hearing aid is a serious medical need," that case involved bilateral hearing loss, not asymmetrical hearing loss. 738 F.3d at 269, 278. Barcelona does not dispute that *Gilmore* can be distinguished from this case on those grounds; instead, he claims that the difference between the two cases "is trivial at best." We disagree.

> As we previously noted in this case, the Eleventh Circuit "[has] not yet addressed whether a prisoner's loss of hearing in one ear, which leads a doctor to prescribe a hearing aid, is insufficient to constitute a serious medical need where the prisoner retains some level of hearing in his other ear." *Barcelona* [*v. Sec'y, Fla. Dep't of Corr.*], 657 F. App'x [896,] [] 898–99 [11th Cir. 2016[4]]. Nevertheless, even without regard to our previous statement, we independently conclude that *Gilmore* did not give the defendants fair warning that their alleged conduct was unconstitutional because asymmetrical hearing loss is a substantively different impairment from bilateral hearing loss. *See Gilmore*, 738 F.3d at 276–77 ("Thus, for instance, if a plaintiff can 'carry on a normal conversation' and hear and follow directions without the use of a hearing aid, a court would be hard pressed to classify the plaintiff's impairment as a serious medical need." (quotation omitted)). Barcelona does not point to any other precedent that would have put the defendants on notice that their failure to provide a hearing aid to him for his asymmetrical hearing loss was unconstitutional. Accordingly, **Barcelona has failed to show that the defendants violated a clearly established right because "existing precedent [has not] placed the . . . constitutional question beyond debate"**. *Ashcroft*, 563 U.S. at 741, 131 S. Ct. 2074. Consequently, the defendants are entitled to qualified immunity.

847 F. App'x at 693 (emphasis added).[5]

---

[4] To be clear, the case to which the Eleventh Circuit refers, *Barcelona v. Sec'y, Fla. Dep't of Corr.*, 657 F. App'x 896 (11th Cir. 2016), is the same Southern District of Florida case referenced *supra* and assigned Case No. 9:15-cv-80102. When first presented with Barcelona's case, the Eleventh Circuit vacated the district court's order *sua sponte* dismissing Barcelona's complaint for failure to state a claim and remanded the matter for further proceedings. *Id.* at 898. On remand, the district court entered an order granting summary judgment in favor of Defendants, which Barcelona appealed and the Eleventh Circuit affirmed. *See Barcelona v. Sec'y, Fla. Dep't of Corr.*, 847 F. App'x 689 (11th Cir. 2021).

[5] The undersigned's finding in a previous order that Barcelona alleged facts sufficient to state a plausible claim against Officer Burkes (*see* ECF No. 17 at 5 (issued Feb. 2, 2021, citing *Gilmore*))

Considering the Eleventh Circuit's decision, and the fact that as of January 4 2020 (the day of Officer Burke's conduct), the Eleventh Circuit still had not determined whether Barcelona's condition (i.e., loss of hearing in one ear, which led a doctor to prescribe a hearing aid, but retention of some level of hearing in the other ear) constituted a serious medical need, the defense of qualified immunity bars Barcelona's recovery of monetary damages against Defendant Burkes in his individual capacity.[6]

Moreover, Barcelona's factual allegations, accepted as true, fail to satisfy the subjective component of the Eighth Amendment standard. While Officer Burkes arguably should have known that throwing the hearing aid on the floor would break it, Barcelona's factual allegations do not plausibly suggest that Officer Burkes consciously knew (as opposed to should have known) that throwing the hearing aid on the floor exposed Barcelona to an excessive risk of serious harm. Barcelona's factual allegations thus do not state a plausible claim for relief against Officer Burkes.

---

was made prior to the Eleventh Circuit's decision in *Barcelona v. Sec'y, Dep't of Corr.*, 847 F. App'x 689 (11th Cir. Mar. 2, 2021).

[6] The Eleventh Amendment bars Barcelona's recovery of monetary damages against Officer Burkes in his official capacity. *See Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974).

Case No.:  3:20cv5356/MCR/EMT

Barcelona's allegations also fail to state a plausible Eighth Amendment claim against Major Schwarz and Representative Keaton. Barcelona seeks to hold these officials liable for Officer Burkes' conduct because they held supervisory positions and denied Barcelona's grievances.

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983). "Because vicarious liability is inapplicable to [ ] § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Under *Iqbal*, "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.* at 677. "[S]upervisors are liable under [section] 1983 'either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional violation.'" *Myers v. Bowman*, 713 F.3d 1319, 1328 (11th Cir. 2013) (quoting *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010)). Facts sufficient to establish a causal connection include those "which support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates

would act unlawfully and failed to stop them from doing so." *Keating*, 598 F.3d at 762 (internal quotation marks omitted). The factual allegations must plausibly show that the supervisory official acted with the same mental state required to establish a constitutional violation against his subordinate. *See Franklin v. Curry*, 738 F.3d 1246, 1250 (11th Cir. 2013).

Further, merely denying a grievance without personally participating in the unconstitutional conduct brought to light by the grievance is insufficient to establish § 1983 liability. *See Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) ("[D]enial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983."); *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (refusing to impose liability under § 1983 on supervisory official who denied administrative grievance and otherwise failed to act based on information contained in the grievance); *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989) (holding that prisoner failed to state § 1983 claim against supervisory officials where prisoner merely alleged the officials denied his grievance and did not allege they were personally involved in the alleged misconduct), *aff'd*, 915 F.2d 1574 (6th Cir. 1990); *see also, e.g., Brown v. Comerford*, No. 3:13cv572/LAC/CJK, 2014 WL 3586257, at *5 (N.D. Fla. July 21,

2014) ("[M]erely denying a grievance, without personally participating in the unconstitutional conduct . . . is insufficient to establish § 1983 liability."); *Swift v. Tifft*, No. 3:12cv171/RV/CJK, 2013 WL 5913796, at *9 (N.D. Fla. Oct. 31, 2013) (same).

Here, Barcelona's factual allegations fail to suggest any causal connection between the actions of either of the supervisory officials and Officer Burkes' conduct during the cell search. Therefore, Barcelona has not stated a plausible Eighth Amendment claim against Major Schwarz or Representative Keaton.

IV. CONCLUSION

Barcelona's factual allegations fail to state a plausible Eighth Amendment claim against Officer Burkes, Major Schwarz, or Representative Keaton, and there is no indication that providing Barcelona another opportunity to amend his complaint would produce a pleading that states a plausible constitutional claim. The undersigned thus recommends that Barcelona's claims be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).

Accordingly, it respectfully **RECOMMENDED**:

1. That Plaintiff's claims be **DISMISSED with prejudice** for failure to state a claim, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).

2.That the clerk of court be directed to enter judgment accordingly and close this case.

At Pensacola, Florida, this 8th day of October 2021.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**